**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-01796-TUC-JGZ (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Chris Paul Snow, | |
| Defendant. | |

Pending before the Court is Magistrate Judge Jacqueline Rateau's Report and Recommendation (R&R) recommending that the District Court deny in part and grant in part Defendant Chris Paul Snow's Motion to Suppress. (Doc. 57.) Defendant has filed an objection challenging the recommendation that the motion be denied in part. (Doc. 86.) After an independent review of the record, and a hearing on the Objection, the Court will adopt Judge Rateau's recommendation.

## STANDARD OF REVIEW

When reviewing a Magistrate Judge's Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis omitted). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149 (1985).

*See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Reyna-Tapia,* 328 F.3d at 1121.

## DISCUSSION

### I. Background

As part of an investigation into a shooting that occurred at Snow's mobile home on August 3, 2019, officers conducted several searches of the residence and also of Snow's truck and sheds. Snow was charged with one count of felon in possession of ammunition and one count of possession of an unregistered firearm after weapons and ammunition were found in the mobile home and shed. Snow moved to suppress the evidence arguing that the searches were impermissible for numerous reasons.

#### A. Factual findings

An evidentiary hearing on the motion to suppress was held on September 25, 2019. Pima County Sheriff's Detective Eric Heath was the only witnesses called to testify. The R&R sets forth Detective Heath's testimony in relevant part, and therefore it is not restated here. Notably, Defendant does not object to any specific factual finding by the Magistrate Judge.

#### B. Legal conclusions

Based on the evidence presented, the Magistrate Judge concluded that the initial entry into Snow's home was permissible based on exigent circumstances, and a second entry and search in the home was justified based on Snow's consent. The Magistrate Judge found that the consent search was objectively reasonable and did not exceed the scope of Snow's consent because Snow authorized officers to search his trailer for evidence of the shooting. During the search for evidence, Detective Heath followed the path of the bullet holes through the kitchen, bathroom and into the bedroom of the residence, where he found a bullet which had entered the comforter on the bed. While in the bedroom, Detective Heath also observed, in plain view, a holster on the television stand and a firearm magazine pouch containing magazines on the bed. Based on what he observed and because he believed Snow to be a felon, Detective Heath sought and obtained a telephonic search warrant from a state court judge. The warrant authorized the search for specified items related to the

shooting and potential firearms offense and described the areas to be searched as the mobile home, "multiple sheds and other covered areas within a fenced yard," and Snow's pickup truck.

The Magistrate Judge concluded that the warrant stated with particularity the items to be seized, but that it was overbroad to the extent that it authorized the search of places in broad terms, some of which were not justified by a probable cause showing in the recorded warrant application. The Magistrate Judge found there was probable cause to search Snow's home and truck, where Snow had gone immediately after leaving his home, but not the sheds and outbuildings or other structures on the property. The Magistrate Judge determined the doctrine of severance could be applied to strike from the warrant the invalid portions, because the "multiple sheds and covered areas" and items seized from these areas were identifiable and specific. The Magistrate Judge concluded that the discovery of items found in locations other than the mobile home and truck should be suppressed.

## II. Analysis

In his Objection to Judge Rateau's recommendation for partial suppression, Snow asserts two general arguments. The first pertains to Detective Heath's credibility, and the second to the application of the severance doctrine.

### A. Detective Heath's credibility

Snow asserts that Detective Heath is not credible because he could not recall the specific time that he arrived on the scene and when certain other officers arrived and entered the trailer. Snow suggests that Heath had to have arrived earlier than the Detective testified to. In his written Objection, Snow argues that the Magistrate Judge erred as a matter of law by not making a finding as to Detective Heath's credibility in the R&R. However, Snow also acknowledges that the Magistrate Judge implicitly found Detective Heath credible. Snow states that the Magistrate Judge "believed the sworn testimony of Det. Heath that he first arrived at 7:30 p.m." (Doc. 86, p. 8.) Nonetheless, Snow argues that the Court should re-commit the matter to the Magistrate Judge with instructions to make credibility determinations or, if the Court concludes that Defendant did not

1  sufficiently raise the issue before the Magistrate Judge, that the Court consider in the first

2  instance Detective Heath's credibility.

3      At the hearing on the Objection, defense counsel acknowledged that there was no

4  specific statement by Detective Heath that was being challenged as to its truthfulness.

5  Instead, he argued that the Magistrate Judge "shut [him] down" and would not allow him

6  to ask questions of Detective Heath that would have shown that the facts were different

7  from what Detective Heath testified to, and as a result, the Magistrate Judge was probably

8  misled. Counsel further argued that the Court should allow the matter to be re-opened

9  before the Magistrate Judge to allow additional questioning of Detective Heath or to call

10 additional witnesses. At bottom line, it appears that Snow is seeking another opportunity

11 to develop his theory that the ammunition and holster observed in Snow's bedroom were

12 manipulated and placed in plain view to provide a basis for obtaining a search warrant.

13 The Court finds Defendant's arguments unpersuasive for many reasons.

14      First, the Magistrate Judge did not prevent Defendant's attempt to question

15 Detective Heath. The record shows that defense counsel was permitted to question

16 Detective Heath about the timeline and the presence of officers at the scene. (*See* Doc.

17 56, pp. 57, 73-75.) Detective Heath responded to the questions, stating that he did not

18 know what the other officers did before he got there and he did not know precisely what

19 time he arrived on the scene. (*Id.* at pp. 33, 52, 59.)

20      Second, there is no indication that Judge Rateau was misled. There was no question

21 that the timeline of the investigation was at issue. That fact was acknowledged by the

22 parties and Judge Rateau at the start of the hearing. Moreover, the issue was apparent

23 through defense counsel's repeated challenges to Detective Heath's failure to provide a

24 more specific timeline.

25      Third, Detective Heath's response that he did not know the particular time periods

26 does not amount to misleading testimony. Notably, Detective Heath did not represent in

27 the affidavit for the search warrant that he arrived at a particular time or make any other

28 representation to the same effect.

Fourth, Defendant was not prevented from exploring with Detective Heath, or by calling any other witness, whether officers planted the evidence in plain view in the bedroom or moved items from where they were or touched them prior to execution of the search warrant. Defendant concedes that he was given the opportunity to question Detective Heath and could have called any of the other officers as witnesses at the hearing to explore what searching was done of Defendant's residence by Heath and other officers.

Finally, Defendant concedes that he has no new evidence to support his theory that officers may have planted evidence in the bedroom or moved items into plain view prior to execution of the warrant. Consequently, there is no basis for re-opening the hearing to take additional evidence in hopes that it may establish that Detective Heath is not credible.

**B.  Application of Severance Doctrine**

The government does not contest Judge Rateau's conclusion that the warrant was overbroad and severable with regard to the outdoor storage shed and the 25 rounds of ammunition found in the shed, or her recommendation that evidence of those rounds of ammunition be suppressed.  (Doc. 75, p. 7.)  Snow argues that the severance rule should not apply and that all evidence seized pursuant to the warrant should be suppressed.  Snow reasons that Detective Heath deliberately requested to search areas where he had no probable cause and thereby tainted the entire search.[1]

---

[1]Snow cites to other alleged misconduct by Detective Heath in support of his request for the sanction of exclusion.  Snow's arguments are unpersuasive and his allegations unsupported by the record.

Detective Heath's omission of any time references in his investigative report does not constitute a Fourth Amendment violation. Moreover, Defendant does not explain how providing more specific timing of the observations of the weapons was necessary to support a finding of probable cause in this case.

Detective Heath was not vague in explaining how he knew Defendant was a prohibited possessor.  He told the state judge that Snow was well-known in the area, has been arrested for several felonies, and had gotten out of jail on April 5, 2010 after serving time for felonies. Detective Heath further stated that a search of law enforcement data bases did not show that Snow had his rights restored.  Snow does not challenge the correctness of Detective Heath's conclusion.

Detective Heath did not imply to the state court judge that Heath was the first officer to view the gun in plain view in the bedroom.  Nor did Detective Heath state or imply that Salmon's claim that there were two guns in the house, was reliable. Heath told the judge that there was a shooting and that Salmon shot at three individuals, including Snow, in Snow's trailer; that Salmon told officers that Snow and others had two firearms and shot at him; and that Snow said that Salmon shot at Snow. Heath did not represent that either of

The application of the exclusionary rule "properly has been restricted to those situations in which its remedial purpose is effectively advanced." *United States v. Sears*, 411 F.3d 1124 (9th Cir. 2005) (citing *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). "Ordinarily, only evidence that is obtained in violation of a warrant is suppressed." *Id*. at 1131 (citing *United States v. Chen,* 979 F.2d 714, 717 (9th Cir. 1992)). The Ninth Circuit considers three factors in evaluating the appropriateness of applying the exclusionary rule: (1) whether suppression would affect the police misconduct at issue; (2) the source of the error in the particular case and whether any evidence suggested that the source was inclined to ignore or subvert the Fourth Amendment; and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error. *Id.* at 1128.

Total suppression is appropriate "when a warrant is wholly lacking in particularity." *Id.* at 1129. This can occur where the warrant does not list the items to be seized or where officers "in effect, conducted a warrantless search." *Id.* at 1129 (quoting *United States v. Grubbs,* 377 F.3d 1072, 1079 (9th Cir. 2004), *rev'd on other grounds,* 547 U.S. 90 (2006)). When a search warrant is overbroad, partial suppression is allowed under the "doctrine of severance, which allows a court to strike from a warrant those portions that are invalid and preserve those portions that satisfy the fourth amendment." *Id.* (internal quotation and citation omitted). "The doctrine of severance requires that identifiable portions of the warrant be sufficiently specific and particular to support severance." *Id.* at 1130.

Magistrate Judge Rateau concluded that severance was appropriate because those portions of the warrant relating to the residence and the truck were valid and the items discovered in the sheds and covered areas pursuant to the overbroad portion of the warrant, were readily identifiable. She found:

> The "multiple sheds and covered areas" at issue here are identifiable and specific. Using the Evidence Control Form, the items seized from these areas

---

the conflicting stories was reliable. More importantly, as Magistrate Judge Rateau found, Detective Heath's inclusion of Salmon's statements (and hence their reliability) does not affect the finding of probable cause in relation to searches of Snow's residence and vehicle. Those searches were supported by what Detective Heath observed in the bedroom in plain view, which was communicated to the state judge during the application process.

are readily segregated from those that were seized from the residence. *See* Ex. 7 (Evidence Control Form categorizing evidence by location).

(Doc. 57, p. 13.)  The Court agrees.

Under the facts of this case, the deterrent value of wholesale suppression under the exclusionary rule would be minimal. The parties do not dispute Judge Rateau's finding that the warrant was overbroad and that Detective Heath did not provide sufficient facts to support his request to search Snow's sheds and outer buildings for weapons.  But even if these statements were insufficient to establish a fair probability that contraband or evidence would be found in the shed or outer areas, there is no indication that Detective Heath was deliberately attempting to circumvent the Fourth Amendment. *See Sears,* 411 F.3d at 1128 ("In the interest of deterrence, 'evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'") (quoting *Krull,* 480 U.S. at 348-49.)  Detective Heath stopped the search of Snow's mobile home upon observing the holster and ammunition for the purpose of obtaining a search warrant. (Doc. 56, p. 22.)  Heath told the officers to immediately exit the home, and Detective Heath sought a search warrant to search for evidence that Snow was committing the crime of felon in possession of ammunition.  (*Id.* at pp. 22-23.)

Similarly, the Magistrate Judge did not find, and this Court does not conclude that Detective Heath was acting in bad faith in requesting to search the outer buildings. Detective Heath testified that he sought to search the storage sheds and vehicle because there was some delay between the time 911 was called and when the deputies arrived, potentially giving Snow the opportunity to hide any weapons he might have, and because Snow had earlier been freely moving about the property and had gone to his vehicle. (Doc. 57, p. 4.)  Detective Heath's testimony is supported by the transcript of the telephonic application.  There, Detective Heath told the state court judge that Snow left his house and went directly to his truck, for quite some time, but that deputies did not have eyes on him the entire time.  Importantly, the search of Snow's residence and his truck were supported by probable cause.   Under these circumstances, suppression of items seized from

Defendant's home is not warranted.

Applying similar reasoning, the Ninth Circuit, in *United States v. Van Damme*, 48 F.3d 461 (9th Cir. 1995), did not require the suppression of contraband seized pursuant a warrant that did not specify the items to be seized. In *Von Damme,* the warrant included a description of the places to be searched and referred to an attachment that listed the items to be seized. The attachment, however, was not provided to officers executing the warrant, and the officers conducted the search without any guidance as to what items they were authorized to seize. Nevertheless, because the warrant issued on probable cause and adequately described the places to be searched, the court concluded that evidence seized in plain view need not be suppressed. *Id.* at 466-67. Likewise, probable cause existed here for the authorized portions of the warrant. And, there is no basis for believing the exclusion of evidence will have a significant deterrent effect in these circumstances. *See Sears,* 411 F.3d at 1129 (declining to suppress all evidence seized where there was no showing of deliberate misconduct and "probable cause existed for the authorized portions of the warrant.").

## CONCLUSION

IT IS ORDERED:

1. The Report and Recommendation (Doc. 57) is ADOPTED.

2. Defendant's Objection to the Report and Recommendation (Doc. 86) is OVERRULED.

3. Defendant's Motion to Suppress (Doc. 34) is DENIED.

Dated this 24th day of February, 2020.

Honorable Jennifer G. Zipps
United States District Judge